Your Honor, this is the first case in the afternoon called 209-239, Stephen Mayer v. Kelly-Albert, et al. v. Chicago Mechanical Services, et al. On behalf of the Appellants, Mr. Newton E. Finn. On behalf of the Appellees, Mr. Michael Reese. Good afternoon, Mr. Finn. Thank you, Your Honor. I'm going to introduce the Court. Again, I'm Newton E. Finn, appearing on behalf of the plaintiffs' appellants, this action of the Mayer family and the Albert family. I thank the Court for the opportunity to engage in oral argument on a rather interesting case. Because the plaintiffs believe that precedents control this case in their favor, I'd like to make... What is your definition of precedent, Your Honor? Prior case law. That does not promote a rule. Well, what prior... Isn't this a case of first impression here in Illinois? I do not believe so. And what case do you believe controls? Goodema and Gimp, largely. You're talking about the Van Brocklin case? Yes, yes, yes. Isn't that case distinguishable there? Didn't the plaintiffs actually stay in their home as opposed to your clients who moved out of their home? Yes, I would argue that that is an argument that, in fact, cuts for the plaintiffs. If one is entitled to have damages for loss of use of home, of a component of that home, namely a water supply, then certainly if not only a water supply is poisoned, but if an entire home is poisoned, and a family cannot simply not drink water or use water in its home, it's not carded in, but rather must evacuate the home altogether for a period of time, I'd argue that, ah, for sure, if damages are allowed for the loss of use of a component of a home, they certainly should be allowed for loss of use of an entire home. That could be measured in money damages in the sense of if your home has a rental value of $500, you get $500 for the month you're out. Yes, Your Honor. Several of the cases address that very issue. There are arguments made that loss of rental value is one measurement of damages. Loss of market value, if there's some sort of impact ongoing on the home, et cetera. The cases that I have quoted in my brief, which I'd like to discuss at the Court's pleasure, indicate that those damages are not sufficient when it comes to a home, that a home, loss of use of a home, strikes at the very heart of one's attachments, one's identity, one's ability to enjoy one's life. It's not like losing a bicycle or a car. So you mentioned, for example, your clients couldn't sleep in their own bed, use their own bathroom, or eat at their own table. Well, what if they moved in with their grandparents, assuming the family got along well, or let's say a best friend in a huge home, had their own rooms? Are you saying that, nevertheless, damages for inconvenience and discomfort are still appropriate? Yes, I am. And why would that be? What's the rationale for that? Because I believe that one's home is a unique place, that no matter how luxurious one's alternative quarters may be, there is simply no substitute for living in the environment in which one's family is used to interacting. Home is where the heart is. Home is, there's no place like it, and however humble it may be. These are all sayings that go way back in human history, but they're ethical to the law as well. Well, could this lead to open-ended liability, really, for defendants in general? I don't know how. We're talking about an aspect of the tort of negligence in this case, which results in physical damage to a home. This is an aspect. This is not a personal injury case. This is a physical damage case. Mr. Coleman just talked about recovery of rental value for the property damage, but you're asking for more than that, the inconvenience and discomfort damages. Right. For 100 years, courts in Illinois have upheld recovery for the discomfort, the deprivation of use, the inconvenience, the dislocation of not being able to fully enjoy the benefits of one's home, one's domicile. This has been something that the courts have repeatedly addressed as late as, certainly, 64. This district addressed this issue in Godema. It has been addressed, like I say, since Gamp. It's been addressed as late as 84 in Nisbet, by the way, post-Rickey, post-Mormon, in a breach of warranty case. Again, loss of use. Nisbet, of course, alluding to referencing a federal case, which pertained not simply loss of use of a component of a home, but of an entire home. I believe that the precedent is really quite clear, at least up until now, that these sorts of damages for being displaced from one's home or displaced from using even a portion of one's home for a length of time are compensable. Interestingly, they are to be determined, apparently, solely by a jury, based upon the evidence of the length of deprivation, how long folks have been out of their home, the kinds of things they've had to do to make adjustments to that difficult situation. There apparently is no calculation that is allowed by an expert witness. There's no monetary formula that can be used. Because of its, I guess, general nature, aspect of human existence, that a jury is deemed entitled to listen to those issues, to weigh them, and to put an appropriate value in their discretion upon what recovery for that home deprivation, that loss of use of one's domicile, should be. Counsel, just so I understand, hopefully I will understand, it seems to me that what you're saying is that you're asking for more than just the cost of replacement of a special kind of shower that might be in the home that hits it from five or six or 18 different directions. You're asking for more than the objective value of a Whirlpool or a sauna or an automatic opening garage door on your garage. You're asking for the subjective value of the love and affection that one has for the home and hearth and the sense of reassuring or reassurance that one feels by being in one's own home and one's bed. Is that correct? That is correct. And the jury will then determine the amount of damages based upon what they believe this subjective damage is? Yes. That is what I am arguing, what I'm contending, that the physical discomfort deprivation, as the case law says deprivation of use and comforts of the home, comforts of the home, goes directly at that sort of damage. Would you call this consortium of the home instead of consortium of the spouse? That's an interesting phrase. The case law doesn't refer to it as such, but certainly loss of consortium has to do with a unique aspect of one's estate. It seems to contain both objective, she washes the dishes, she brings you the beer, she makes the meal, she washes your clothes, and then there's the other things that are more abstract. Yes, Your Honor. I think that that's a very apt way to put it. The law does have a special place in many areas for the home. One can look at the importance of domicile in various categories, be it voting or whatever. The idea of home invasion in the criminal law at times was deemed a very aggravated form of burglary. We have a couple of notes here. Counsel, let me just ask you, use the word special. Aren't the damages that your clients were asking for, for inconvenience and discomfort, special damages, and don't they need or didn't they need to be specially pleaded? I believe. And were they? Yes, I believe they were repeated. Every count of this multi-count complaint from its inception included home displacement as an aspect of damages. But you're making home displacement the same thing as damages for inconvenience and discomfort. Were those words actually used in the pleadings? Let's see. Let us know. I'm not sure exactly. My understanding, it's been a while since I looked at the record. My understanding is that every count of the complaint had a clause that related to the loss of the use of the home by the two families. I know that in several depositions at great length, several parties went into these elements of distress, dislocation, being forced to go from hotel to hotel, from living out of suitcases for eight, nine months. This was laid out quite clearly in discovery. It was included in, again, every count of the complaint. There was no motion made by the defendant for any bill of particulars, any more definite statement. I submit that at least at the pleading level, there was sufficient language in all counts of the complaint, certainly along with the one against Meshuggah Mechanical, that did cover the issue. And in light of the deposition testimony, I don't think there's any element of surprise here as to that this was an element of being sought for recovery. Go ahead. I know we've asked a lot of questions, but I know you want some opportunity to cover some points we might not have asked about. I appreciate the opportunity to respond. To go back quickly, 1894, the Gimp decision in a nuisance case held that loss of use of a home, physical comfort of a home, was recoverable. That was picked up in 64 in the Godema case in an action based on not nuisance but negligence. And the Godema court held, in fact, this district held, that the rationale of Gimp vis-à-vis loss of use of home damages applied equally to a negligence action as to a nuisance action. In 1984, again, the only appellate court in this first district, Gimp Nisbet, breached a warranted case, again, affirming that the loss of use of a home was compensable in terms of physical discomfort, et cetera. And, in fact, again, it's a reference to a case, Durant, Seventh Circuit case, which allowed such damages, by way of negligence action, when the entire home was rendered uninhabitable. And, again, Mormon and Rickey, I quite frankly will confess to the court I do not understand how they impact this case at all. Nisbet, I would point out, was decided subsequent to both Mormon and Rickey. Mormon, as I understand it, had to do with whether economic loss, lost profits, these indirect sorts of damages could be recoverable. When an injury to property, such as a manufactured machine, occurred, and whether the secondary damages could be recoverable, and Mormon drew a line there, said no. Mormon had no problem with injuries flown from a direct injury to property. In this case, we have a direct injury to a home, which is certainly a form of property. Rickey was a liberalizing decision, not a confining one. The prior rule was the physical impact rule, as the court well knows. Rickey liberalized that and said, no, there will be a zone of danger rule as far as who can recover from mental distress. Again, we're talking about a property damage claim here, not a personal injury claim. But insofar as Rickey might arguably remotely have some application here, every member of both these families was in the zone of danger. They were in the midst of condominiums that had been riven poisonous, and they were forced to evacuate their homes or to suffer the consequences. So if the zone of danger does have some application there, I submit to you that every plaintiff in this case is in the zone of danger. So, again, I think case law has been quite clear up to this point that loss of use of one's home is compensable. It is a bit of a sui generis thing when it deals with a home because your normal forms of compensation, rental value, diminution in market value, et cetera, are deemed insufficient in this particular case of losing one's home, much as the Justice, I think, aptly pointed out, analogous in the sense of consortium and losing one's mate for a period of time. You can't simply say, well, what would it cost to have a housekeeper? What would it cost to have a cook? It's more than that. There's a very intimate matter to it, a very direct bond that has been lost, and the law does recognize in certain situations the validity of that. If you're using your automobile as a home, quote, unquote, would you have, if somebody damages your automobile so it can no longer be used as a home, would you be entitled to inconvenience and discomfort damages? That's an interesting question. I don't know whether, I don't have an answer to that. I haven't thought about it. I suppose that any legal doctrine can be stretched so far that at a certain point it becomes self-defeating. And I think at that point, I think you'd have to... The initial attachment to a house is obviously, I think, obviously, more than to a car. Yes. Even though you're living in a car. Yes. I would question whether it could be taken that far, Your Honor. I don't know. Thank you, Counsel. You'll get an opportunity to respond. Thank you. Mr. Reces. Good afternoon. May it please the Court. My name is Michael Reces, and I'm here today on behalf of Chicago Mechanical Services. Plaintiff's claims of damages have been a moving target for the past seven years since the suit was first filed. Would you raise the microphone? I'm sorry. Plaintiff's claims of damages have been a moving target for the past seven years. By the time of trial, it was clear that they had suffered no bodily injury from exposure to mold. They had no expert testimony that they were in reasonable fear of injury from exposure to mold, and they had no expert testimony that the stress of relocating somehow aggravated any preexisting underlying physical condition. They were not claiming damages for property damage or living expenses. Their claims are limited only to the inconvenience and discomfort of having to live elsewhere. So is this a case of first impression in Illinois or not? I believe it is. I believe that as counsel recognized, sometimes a legal concept can be stretched beyond recognition, and I think that is precisely what counsel is doing in this case. I think it's a very unique case as far as what I just recounted as far as how the damage claim has evolved over seven years, and by the time it came up for trial, what had started out as exposure or a bodily injury claim became this nebulous concept of inconvenience and discomfort or, as I think Justice McClary said, loss of consortium of the house or of the home. Well, you call it a nebulous concept, but it's recognized in other states, isn't it, counsel? It is recognized when under circumstances very different from this situation. For example? For example, let's look at Van Brocklin. Van Brocklin is counsel's case. Van Brocklin does not hold that inconvenience and discomfort of having to relocate is a separate element of damages in a negligence suit. There, Van Brocklin analogized from nuisance cases and held that having to stay in the home with the discomfort and inconvenience of having no clean water for drinking, cooking, or bathing could be compensated. The Van Brocklin plaintiff's discomfort came about because they looked on a farm and their water well was exposed to manure, which turned the color of their water, the color of manure, and which began to smell like manure. But isn't the effect the same? That is, the people who stayed in the home couldn't use their plumbing, their water supply. The plaintiffs here moved out of their home so they didn't have the use of their bathrooms and their water supply. I mean, what is the ñ can you point out what the difference is? Well, I think that where the damage has been recognized, it's recognized as part of an exposure to, for lack of a better description, the nuisance. Now, I'm not saying that it's limited to nuisance because Van Brocklin is a plaintiff's case, but there you're talking about exposure to the bad smell, or in Nesbitt it was exposure to pests in the basement where the cracks in the foundation had started. You're talking about exposure to something noxious. Here, their exposure is to what? To clean sheets. I don't mean to be flippant, but it's exposure to clean sheets and running water and good food and what may be maid service or if the hotel has a swimming pool. I mean, I'm not trying to be dismissive of the claim, but it's not the same situation at all. And if you look at Nesbitt, which is the other case that they have cited, in Nesbitt, again, the damage comes about because they are occupying the premises. The testimony is that part of the home that was damaged was the basement. And the statement of facts in the decision reflect that, quote, plaintiffs could only use the basement to wash clothing and for storage. They stayed. Counsel wants to take the legal, the legally recognized damage, okay, that applies in one situation and expand it into a whole different situation where their exposure is to something that is, that in other circumstances would not be considered damage at all. They want to turn the adage, you know, there's no place like home, into a new element of damages. And I think that, Justice, I don't know if you're correct in suggesting that that might give rise to some type of very open-ended liability. Counsel? Yes. Section 929 subparagraph 1 of the restatement of the court's second says, if one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for, A, the difference between the value of the land before the harm and the value after the harm, or, at his election in an appropriate case, the cost of restoration that has been or may be required. And, B, the loss of the use of the land, and, C, discomfort and annoyance to him as an occupant. And I take that such cases as Van Brocklin would be a, would recognize that principle. And I would emphasize the word is an occupant. If you're an occupant and you're exposed and you stay, if you stay there. But the problem in this case where the plaintiffs were, that by the time we got to trial, they had nothing else. They didn't have any property damage. They didn't have any living expense. They didn't have any bodily injury. They didn't have any reasonable fear of injury. And they couldn't show that relocating aggravated any preexisting physical condition. They were left with, again, this notion of discomfort and annoyance that is untethered or it's unaccompanied by any other compensable damage. Are you saying that the restatement applies only to situations like Van Brocklin where the person remains on the property? I would have to say that at least as far as I have seen in Illinois law, that would be correct. I'm not prepared to go beyond what some other jurisdiction, certainly no case has been cited to us from another jurisdiction that would recognize recovery in similar circumstances. And I would put some emphasis on the last word, occupant. And it all comes about, again, from the idea that you're exposed to something noxious while you stay put. And that, I think, is very different. In Van Brocklin, I mean, if you just look at the facts, one of the plaintiffs there had become sick to his stomach and, you know, diarrhea from exposure to water that smelled like manure. Okay. You can understand why you compensate for that. A jury can understand that. But as a jury, now you're going to take this concept and say, well, now the jury has to start to place some value. Because, remember, no one can testify to it, right? No one can testify to it. So now the jury is going to, in terms of assigning a dollar value, so now the jury is going to decide, yeah, what is the value of sleeping on clean sheets but it's not your bed? What's the value of having food, you know, having good food but it wasn't prepared in your own kitchen? You know, sitting in a chair but it's not your recliner at home? Again, we start to get back into this area of loss of consortium of the home. Did the trial court find as a matter of law that these damages didn't exist in the State of Illinois or did the trial court find that as a matter of fact they weren't alleged or facts weren't sufficiently alleged that would get past a motion for summary judgment? Well, I think the way at first, I think you have to go back to see how this claim originated. It started out, we made a motion for summary judgment as to Emily Albright. And they had been claiming that the distress of relocating had aggravated a preexisting condition that she had. And we filed a motion for summary judgment saying, you can't prove it, you don't have an expert. And they came back and said essentially, as one of their grounds, well, we don't have to have an expert because there is this concept of just recovering for the discomfort and inconvenience of not living in one's house. That was done within 60 days of trial. The judge granted summary judgment based on the fact that there was no expert testimony. Then when we were preparing for trial, plaintiffs came in on a motion to reconsider it for the first time inside of Van Brocklin because originally they didn't even cite Van Brocklin. They come back in a motion to reconsider, they cite Van Brocklin and say, okay, now for everybody, not just for Emily but for all of the other four plaintiffs in addition to Emily, the only claim at issue is going to be this concept of discomfort and inconvenience. We didn't have any notice given the state of the pleadings that they were making that claim. Those words, inconvenience, discomfort, annoyance, they're not in the pleadings. The pleadings only talk about being dislocated from the condominium unit. Well, I'd have to say that the judge based his ruling on two grounds. One, he didn't think that those damages could be recovered in this situation. Two, we didn't have any fair notice that those damages would be sought at trial based on the state of the pleadings and given the fact that they had never been disclosed in discovery. Disclosed what? Disclosed in discovery. Did he find that you did have adequate notice and they were disclosed, counsel? Isn't that what the record shows? Quite the contrary, Your Honor. When the question came up during the depositions about relocating, about moving out of the house, it was always done in the context that they were trying to show that the stress of moving and the stress of relocating had caused some type of physical condition. That's what they were trying to show. That's how the claim, when I say the claim's been a moving target, it's been a moving target for the past seven years. They were trying to show at one point, and this is when the depositions were being taken in 2005 in the former lawsuit and the original action, they were trying to show that there was an aggravation of a preexisting physical condition. They couldn't make that showing. Couldn't make that showing for Emily, couldn't make that showing for anyone. But now it's a trial. But now, yes, but now by the time we get to trial, that claim has been abandoned because they had no expert. We didn't have any notice that within 60 days of it, I mean, we didn't have any notice until they filed a response in August that instead of claiming that there was some aggravation of a physical condition, that instead they were going to be claiming nothing more than I should be compensated, that each of them should be compensated because they had a move. Now, there was a motion and limine effect. There was a motion and limine on that. Correct. And incidentally, it's sort of interesting, when I talked about how their claim had evolved, they had filed their own motion and limine to bar us from even telling the jury about what their physical condition was. They didn't want the jury to even know about what the physical condition was because, again, they just wanted to focus on this one thing, this idea that you get damages for living in an extended stay hotel. Now, we didn't have any notice at any point through the pleadings or through the Rule 213 disclosures. By the way, the Rule 213 disclosures, they admit that they didn't tell us because they said we didn't have to tell you because you didn't ask. Because, again, we were asking about what we knew about from the complaint, personal injuries. Tell us about your condition of well-being. What doctors are you going to? What expenses have you incurred? And instead they're telling us now on the eve of trial, forget all that. Now we're just going to talk about inconvenience and annoyance or discomfort, concepts that are found nowhere in the pleadings, nowhere in the Rule 213 disclosures in either lawsuit, and in the context of the depositions only are discussed in context with a claim that they abandoned, a claim that moving aggravated a preexisting physical condition. And that's not enough. That is not enough. It's interesting that in Van Brocklin, the court had talked about whether these damages were special damages that had to be pled, and the court says, but we don't have to address that issue because the defendant didn't even raise the challenge until after verdict. And, of course, that does come too late. Here, of course, we raised it before trial. We raised it as soon as we knew, which was not until the middle of August, that now finally they had come into that that was the last theory of damage that they were going to be able to bring to trial. They were not claiming this inconvenience and discomfort without any underlying physical condition until well within 60 days of trial. The claim by then was nothing more than an afterthought. For all the reasons set forth in our brief and during our argument today, we ask you to affirm, mindful that it is a privilege and not a right to address the court. We thank you for giving us this oral argument. The damages for lack of use, something is destroyed that you used and you enjoyed using, a hobby machine or something like that. Somebody destroys that machine so you can no longer use it while you're using it. You have happiness and now you're very unhappy. Would that type of damage be recognized? Absolutely not. I mean, certainly you would get, if you have to run a comparable machine, a replacement machine, yes. And here they were paid to the penny. They have no out-of-pocket expense. We're just talking about this subjective component above and beyond the objective economic out-of-pocket aspect. Call it what you will. Thank you very much. Thank you, counsel. Mr. Finn. Thank you. Very briefly, I would call the court's attention in response to the opposing counsel's argument to two specific instances of language. One in the GEMP decision, which says where the injury is to physical comfort and results in deprivation of the comfortable enjoyments of a home. The reason I emphasize that is we are talking about a direct injury to physical comfort in one's domicile. That is quite clear in GEMP. The Nisbet case has an interesting bit of language. In our opinion, an award of damages for loss of use of a home, comma, or portion thereof, comma. But they weren't negligence cases, were they? Either of those. One was breach of warranty. GEMP was a nuisance case that was brought into the negligence field by GEDEMA or pursued by Van Bracken. And Nisbet was a breach of warranty case. But the damages aspect I would submit in these cases is the theory of damages, even though the theory of liability may be the theory of damages, is the very premise. What is your response to Mr. Reese's statement that, based upon the pleadings, you are claiming an assertion or aggravation of a preexisting dysfunction, illness, or injury? And thereafter, you raise what you're essentially raising on appeal. There is no doubt that when this case was born, there were a variety of damages involved, alleged. One of them was physical injury. It was alleged that this mold and this toxic atmosphere, this kind of, had caused illness, physical illness, to various places, especially with regard to a young girl, a two-year-old girl, Emily, Emily Alpert. By the time the case reached the trial stage, the medical evidence had not been able to establish that link that had sort of dropped off. And, in fact, the trial court, I think, correctly ruled that absent that physical evidence, a personal injury action on behalf of the minor would not go forward. However, the trial court ignored the other aspect of damage to this minor, as well as to all the other plaintiffs, and that was home displacement. The home displacement was pled in every count in language substantially as follows, paragraph 6 of instance of count 7. There's a similar paragraph in every count of this complaint. As a further result, Plaintiff Steve Mayer suffered physical damage, a substantial decrease in the fair market value of his home, and he was displaced from his home for an extended period of time. I submit, as far as the pleading is concerned, that allegation made in every count of this complaint, followed by, again, rather descriptive and lengthy testimony and deposition as to this element of loss of comfort and what it entailed in the lives of these plaintiffs, would overcome any last-minute notice issue that the defendants may attempt to raise. I think this was on the table from square one and became highlighted, certainly. It wasn't sufficiently highlighted in the pleadings, which I think was there, but it certainly was highlighted in the discovery, and I don't think there's any surprise to anyone that this was the element in this case. Thank you very much, counsel. At this time, the court will take another under advisement and render a decision in due course.